IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                )
LYNDA GAMBLIN and LONI A. HART,  )
                                )
              Plaintiffs,        )
                                )
v.                              )  Civ. No. 17-00557 ACK-RLP
                                )
NATIONSTAR MORTGAGE LLC; FEDERAL )
NATIONAL MORTGAGE ASSOCIATION;   )
BARRY JAMES HARDING; DEBORAH LYNN)
HARDING; and DOE DEFENDANTS 1-50,)
                                )
              Defendants.        )
_____ )


## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants Nationstar Mortgage LLC and Federal National Mortgage Association's Motion for Summary Judgment, ECF No. 15, as follows:

> 1. Defendants' Motion for Summary Judgment on Plaintiffs' quiet title, ejectment, and declaratory relief claims against Nationstar Mortgage LLC and Federal National Mortgage Association is GRANTED;

> 2. Defendants' Motion for Summary Judgment on Plaintiffs' wrongful foreclosure claims against Nationstar Mortgage LLC and Federal National Mortgage Association is DENIED.

### FACTUAL BACKGROUND

On June 26, 2008, Bruce J. Cary executed an apartment deed in favor of Plaintiffs Lynda Gamblin and Loni A. Hart

1

(collectively, "Plaintiffs"), conveying to them the real property located at 2895 S. Kihei Road, Apartment 303, Kihei, Hawaii 96753, Tax Map Key ("TMK") No. (2) 3-9-004-139-0018 ("Property").  Plaintiff's Concise Statement of Facts ("Pl.'s CSF"), Declaration of James J. Bickerton ("Bickerton Decl."), ECF No. 36-1 ¶ 4; Pl.'s CSF Ex. 2, ECF No. 36-4 at 1-3.  In July 2008, Plaintiffs executed a mortgage on the Property in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Mangum Mortgage Inc., its successors and assigns, which was later assigned to Defendant Nationstar Mortgage LLC ("Nationstar").  Compl., ECF No. 1-1 ¶¶ 16, 17; see Defs.' Concise Statement of Facts ("Defs.' CSF"), Declaration of Jade Lynne Ching ("Ching Decl."), ECF No. 16-1 ¶3; Def.'s CSF Ex. 1, ECF No. 16-2; Bickerton Decl. ¶ 5; Pl.'s CSF Ex. 3, ECF No. 36-5.  The mortgage was security for Plaintiffs' performance under a promissory note in the amount of $369,000.00.  Defs.' CSF ¶¶ 1, 2; id. Ex. 1, at 191.[1]  On December 18, 2008, Gamblin executed a quitclaim apartment deed in favor of Hart; that deed was recorded with the State of Hawai`i Bureau of Conveyances ("BOC") on December 23, 2008.  Compl. Ex. A, ECF No. 1-1 at 30-36.[2]

---

[1] Citations to specific pages of the mortgage are to the "Page ID #" affixed onto each page by this Court's electronic filing system.
[2] This citation is to the "Page ID #" affixed by the Court's electronic filing system.

Plaintiffs assert that, at some point, "part or all of the interest in the mortgage loan had been sold to Fannie Mae [Federal National Mortgage Association], such that while Nationstar claimed to be the mortgagee, Fannie Mae also claimed to be the owner of the mortgage loan." Compl. ¶ 18.  At the hearing on the instant Motion, counsel for Nationstar and Fannie Mae (together, "Defendants") admitted that Fannie Mae was, at the time of the foreclosure, the beneficial holder of the promissory note, and stated that Nationstar was a servicer acting on Fannie Mae's behalf.

Plaintiffs defaulted under the promissory note and mortgage.  Defs.' CSF ¶ 3; Ching Decl. ¶ 4; Def.'s CSF Ex. 2, ECF No. 16-3.  No notice of acceleration is in the record, but Plaintiffs assert that any notice of acceleration they received was defective in that, "among other omissions, [it] failed to inform Plaintiffs that they in fact had certain rights with respect to reinstatement and/or the sale."  Compl. ¶ 25.  On October 20, 2010, Nationstar initiated a non-judicial foreclosure under the power of sale in the mortgage and former Hawaii Revised Statutes ("HRS") Chapter 667, Part I (2008).[3] Defs.' CSF ¶ 3; Ching Decl. ¶ 4; Def.'s CSF Ex. 2, ECF No. 16-3.

---

[3] HRS §§ 667-5 et seq.—containing the remaining power of sale portions of HRS Chapter 667, Part I—was repealed in its entirety on June 28, 2012.  See 2012 Haw. Sess. Laws, Act 182.

To do so, Nationstar caused to be recorded with the BOC a Notice of Mortgagee's Intention to Foreclose Under Power of Sale ("Notice of Intent to Foreclose"), Document Number 2010-159093. Defs.' CSF ¶ 3; id. Ex. 2. The Notice of Intent to Foreclose stated the address and TMK number of the Property. Def's CSF Ex. 2. Plaintiffs assert that this Notice was defective because it did not contain a description of the Property. Compl. ¶ 28. They further assert that Nationstar erred by offering buyers only a quitclaim deed. Id. ¶ 29.

The Notice of Intent to Foreclose directed that a public auction of the Property would be held on December 22, 2010. Defs.' CSF at ¶ , 43; id. Ex. 2 at 1. An advertisement regarding the sale was placed in the Honolulu Star-Advertiser once in each of three successive weeks, the last date being more than fourteen days prior to the scheduled auction date. Ching Decl. ¶ 3; Def.'s CSF Ex. 3, ECF No. 16-4 at 3; Compl. ¶ 30. The public auction did not occur on that date, however, and was instead postponed an unknown number of times, by oral announcement at the time and place of the scheduled auction, until it was finally held on March 9, 2011. Defs.' CSF ¶¶ 4,5; Def.'s CSF Ex. 3 at 3. Plaintiffs contend that Nationstar erred both by not holding the auction on December 22, 2010, and by not publishing new written notice(s) in the newspaper regarding postponements. Compl. ¶¶ 31–37.

4

At the March 9, 2011, public auction, the Property was sold for $318,453.53 to Nationstar or its nominee. Defs.' CSF ¶ 6; id. Ex. 3 at 3. At the hearing on this Motion, counsel for Defendants stated that this was a credit bid by Nationstar acting as nominee for Fannie Mae. Following the sale, on March 21, 2011, Nationstar recorded with the BOC a Mortgagee's Affidavit of Foreclosure Under Power of Sale ("Mortgagee's Affidavit"), Document Number 2011-046885. Defs.' CSF ¶ 7; id. Ex. 3; Compl. ¶ 41.

Around one month later, on April 25, 2011, Nationstar executed a quitclaim deed on the Property to Fannie Mae. Compl. ¶ 19; Bickerton Decl. ¶ 6; Pl.'s CSF Ex. 4, ECF No. 36-6. Nationstar recorded the quitclaim deed with the BOC on June 20, 2011. Pl.'s CSF Ex. 4. Plaintiffs allege that, on October 4, 2011, Fannie Mae executed a limited warranty apartment deed in favor of Barry James and Deborah Lynn Harding ("Hardings"), which Fannie Mae recorded on October 7, 2011. Compl. ¶ 21.

## PROCEDURAL BACKGROUND

On March 9, 2017, Plaintiffs filed a Complaint in state court against Defendants, the Hardings, and numerous Doe defendants. Compl., ECF No. 1-1. The Complaint alleges two counts: (1) quiet title, ejectment, and declaratory relief against all defendants, id. ¶¶ 13-61; and (2) wrongful foreclosure against all defendants, id. ¶¶ 62-70.

On November 13, 2017, the Hardings filed a notice of removal with this Court, Notice of Removal, ECF No. 1, and on November 27, 2017, filed an answer and counterclaim against Plaintiffs, ECF No. 4.  The counterclaim alleges two counts: (1) quiet title, and (2) declaratory relief.  ECF No. 4-1.

Defendants filed a Motion for Summary Judgment ("MSJ") on May 18, 2018, ECF No. 15, along with a concise statement of facts, ECF No. 16.  Hearing on the MSJ was originally scheduled for August 20, 2018, but on July 30, 2018, the parties stipulated to a continuance, ECF No. 22, and the Court rescheduled the hearing for October 29, 2018, ECF No. 28.  On August 8, 2018, the Hardings filed a joinder to the instant motion.  ECF No. 25.[4][5]  Plaintiffs filed their Opposition ("Opp.") to the MSJ on October 5, 2018, ECF No. 35, together with a concise statement of facts, ECF No. 36.  On October 12, 2018, Defendants filed a Reply to Plaintiffs' Opposition.  ECF

_____

[4] The Hardings' joinder was one of simple agreement; it was not filed within seven days of the filing of the MSJ, did not clearly state that the Hardings sought the same relief for themselves as the Defendants sought, and was not based on a memorandum supplementing the MSJ.  See LR 7.9.
[5] The Hardings also filed their own motion for summary judgment on August 8, 2018.  ECF No. 26.  Plaintiffs' Opposition to the Hardings' motion included a counter motion for partial summary judgment against the Hardings.  ECF No. 37; see LR 7.9 (providing that "[a]ny motion raising the same subject matter as an original motion may be filed by the responding party together with the party's opposition[.]").  The Court noticed these two motions for hearing on November 29, 2018.  ECF No. 47.

No. 48.  On October 25, 2018, Plaintiffs made a filing pursuant

to Local Rule 7.8,[6] consisting of eight cases and a short

explanation of the proposition for which each was cited.  ECF

No. 49.  The Court held a hearing on Defendants' MSJ on Monday,

October 29, 2018.

## STANDARD

Summary judgment is proper where there is no genuine

issue of material fact and the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Federal

Rule of Civil Procedure ("Rule") 56(a) mandates summary judgment

"against a party who fails to make a showing sufficient to

establish the existence of an element essential to the party's

---

[6] Local Rule 7.8 provides, in full:

> LR7.8. Motions; Uncited Authorities.
>
> A party who intends to rely at a hearing on
> authorities not included in either the brief
> or memorandum of law or in a letter
> submitted at least four (4) days before a
> hearing should provide to the court and
> opposing counsel copies of the authorities
> at the earliest possible time prior to the
> hearing. These copies of the uncited
> authorities shall have relevant portions
> highlighted. In addition to providing copies
> of the uncited authorities, the party may
> file a document listing the uncited
> authorities, and including a short
> parenthetical describing the proposition of
> law for which each authority is being cited,
> as well as pinpoint citations, but no
> further analysis or argument.

case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal., 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it

8

could affect the outcome of the suit under the governing law."

In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing

Anderson, 477 U.S. at 248). When considering the evidence on a

motion for summary judgment, the court must draw all reasonable

inferences on behalf of the nonmoving party. Matsushita Elec.

Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille

Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating

that "the evidence of [the nonmovant] is to be believed, and all

justifiable inferences are to be drawn in his favor" (internal

citation and quotation omitted)).

## DISCUSSION

Defendants assert their entitlement to summary

judgment on a number of grounds. They argue that: Plaintiffs'

claim for declaratory relief is duplicative of the relief sought

in their other claims, MSJ at 22; Plaintiffs' claims are time-

barred and/or subject to laches, MSJ at 6-20; Plaintiff cannot

assert a wrongful foreclosure claim, or indeed any claim,

against Fannie Mae, MSJ at 22-23; and that Plaintiffs' quiet

title and ejectment claims fail as against both Defendants, MSJ

at 20-21. The Court addresses these arguments below.

## I.  Declaratory Relief

Plaintiffs seek, among other things, "a declaratory

judgment against all Defendants that Nationstar's and Fannie

Mae's non-judicial foreclosure sale and transfer of the Property

. . . is void or at the least voidable at Plaintiffs'
election[.]"  Compl., Prayer for Relief ¶ 7; see also Compl. ¶
57 ("Plaintiffs are entitled to a judicial declaration that said
Defendants have no such rights and the possession of and title
to the Property should be restored to Plaintiffs.").  Defendants
assert that Plaintiffs' request for declaratory relief fails as
a matter of law because it is "duplicative" of Plaintiffs' other
claims.  MSJ at 22.  The Court concurs and finds summary
judgment appropriate on this claim.

       First, it is important to note that declaratory
judgment allows rights and obligations to be "adjudicated in
cases brought by any interested party involving an actual
controversy that has not reached a stage at which either party
may seek a coercive remedy and in cases where a party who could
sue for coercive relief has not yet done so." Seattle Audubon
Soc. v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996) (citing 28
U.S.C. § 2201); Wavecom Sols. Corp. v. Verizon Hawaii Int'l
Inc., No. CV. 11-00337 DAE-KSC, 2011 WL 5374428, at *7-8 (D.
Haw. Nov. 7, 2011) (quoting Seattle Audubon Soc.).  Because a
declaratory judgment is not a corrective action, it should not
be used to remedy past wrongs.  See, e.g., Marzan v. Bank of
Am., 779 F. Supp. 2d 1140, 1146 (D. Haw. 2011) ("[B]ecause
Plaintiffs' claims are based on allegations regarding
Defendants' past wrongs, a claim under the Declaratory Relief

Act is improper and in essence duplicates Plaintiffs' other causes of action." (citations omitted)) (abrogated on other grounds by Compton v. Countrywide Fin. Corp., 761 F.3d 1046 (9th Cir. 2014)). Rather, the "useful purpose served by the declaratory judgment action is the clarification of legal duties for the future[.]" Amsouth Bank v. Dale, 386 F.3d 763, 786 (6th Cir. 2004) (internal quotation marks omitted); see also Societe de Conditionnement en Aluminium v. Hunter Eng'g Co., 655 F.2d 938, 943 (9th Cir. 1981) ("[The Declaratory Judgment Act] brings to the present a litigable controversy, which otherwise might only by [sic] tried in the future.").

Moreover, courts frequently dismiss claims for declaratory relief where the relief sought is duplicative of their other claims. See, e.g., Cannon v. U.S. Bank, NA, No. CIV. 11-00079 HG-BMK, 2011 WL 2117015, at *3 (D. Haw. May 24, 2011) ("The Plaintiffs have requested declaratory relief to correct an allegedly improper mortgage transaction. The Declaratory Relief Act, however, is not an appropriate remedy here since any declaration of the rights of the parties would essentially duplicate Plaintiffs' other causes of action."); Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007) (affirming district court's dismissal of plaintiff's request for declaratory judgment and reasoning, "To the extent [plaintiff] seeks a declaration of defendants' liability for damages sought

for his other causes of action, the claim is merely duplicative and was properly dismissed.").

Here, Plaintiffs' claim for declaratory relief, as pleaded, is based upon Defendants' past wrongs.  See generally Compl.  In addition, Plaintiffs' claim for declaratory relief is commensurate with the relief sought through their other claims; in particular, Plaintiffs' request for a declaration "that Nationstar's and Fannie Mae's non-judicial foreclosure sale and transfer of the Property . . . is void or at the least voidable at Plaintiffs' election," Compl., Prayer for Relief at ¶ 7, mirrors the relief sought through Plaintiffs' wrongful foreclosure and quiet title claims.  The same is true of Plaintiffs' requested declaration that Defendants or the Hardings hold no "right, title, or interest in the Property" and "possession of and title to the Property should be restored to Plaintiffs."  Compl. ¶ 57.

Under these circumstances, declaratory relief will "neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  United States v Washington, 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted).  Accordingly, Defendants are entitled to summary judgment on Plaintiffs' claim for declaratory relief.

## II. Wrongful Foreclosure

### a. Statute of Limitations

Defendants argue that all of Plaintiffs' claims against them are time-barred. MSJ at 6. According to Defendants, all of Plaintiffs' claims accrued no later than the originally published auction date—December 22, 2010—and are thus time-barred by either the two-year time limitation under HRS § 657-7 or the six-year time limitation under HRS § 657-1. E.g., id. at 6, 9, 13. The Court addresses this argument as it applies to Plaintiffs' wrongful foreclosure claims.

### i. Accrual of Plaintiffs' Claims

To determine whether Plaintiffs' claims are time-barred by the applicable statutes of limitations, the Court must first determine when Plaintiffs' claims accrued. The Hawai`i Supreme Court does not appear to have yet decided when a wrongful foreclosure claim stemming from a non-judicial foreclosure accrues, and the parties advocate for different accrual dates. Compare MSJ at 6 with Opp. at 4.

The term "accrue" means "[t]o come into existence as an enforceable claim or right." Black's Law Dictionary (10th ed. 2014). Relevant here, a claim normally accrues under HRS § 657-1 "when the contract is breached." Au v. Au, 63 Haw. 210, 219, 626 P.2d 173, 180 (1981); see also Blair v. Ing, 95 Haw. 247, 264, 21 P.3d 452, 469 (2001) (explaining that, under

traditional "occurrence rule," "the accrual of the statute of limitations begins when the negligent act occurs or the contract is breached."); Schimmelfennig v. Grove Farm Co., 41 Haw. 124, 130 (1955) ("A right of action accrues whenever such a breach of duty or contract has occurred . . . as will give a right to then bring and sustain a suit. . . . If an act occurs . . . for which the law gives a remedy, that starts the statute.") (citations and internal quotation marks omitted).  And a claim accrues under HRS § 657-7 "the moment plaintiff discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter."  Yamaguchi v. Queen's Med. Ctr., 65 Haw. 84, 90, 648 P.2d 689, 693-94 (1982).

     In this matter, Defendants contend that Plaintiffs' claims accrued no later than December 22, 2010.  MSJ at 6-9. "The alleged breach," Defendants argue, "occurred [at the latest] when the public auction was not held on December 22, 2010, the date of the originally scheduled sale specified in the [Notice of Intent to Foreclose]."  MSJ at 9 (emphasis in original).  The Court finds, however, that Plaintiffs' wrongful foreclosure claims did not accrue earlier than March 9, 2011, the date of the foreclosure sale.

     The Supreme Court of Hawai`i only recently recognized a cause of action for wrongful nonjudicial foreclosure.  See

14

Santiago v. Tanaka, 137 Haw. 137, 158, 366 P.3d 612, 633, cert. denied, 137 S. Ct. 198, 196 L. Ed. 2d 128 (2016); Hungate v. Law Office of David B. Rosen, 139 Haw. 394, 407, 391 P.3d 1, 14 (2017) (citing Santiago for the proposition that a mortgagor may bring a claim for wrongful foreclosure).  It is therefore unsurprising that the Hawai`i Supreme Court has not yet decided when wrongful nonjudicial foreclosure claims accrue.  But the state's highest court has recently decided when claims for wrongful judicial foreclosure accrue, and the Court finds that decision sufficiently analogous to guide its hand in the present instance.

In Bank of America, N.A. v. Reyes-Toledo ("Reyes-Toledo II"), No. SCWC-15-0000005, 2018 WL 4870719 (Haw. Oct. 9, 2018), as corrected (Oct. 15, 2018) (currently on remand), the court was faced with the question of whether a mortgagor who was a defendant in a judicial foreclosure action could bring a counterclaim for wrongful foreclosure prior to the issuance of a foreclosure decree.[7]  The court below had held that the mortgagor

---

[7] A foreclosure decree, or decree of foreclosure, is an order issued by a Hawai`i circuit court acting pursuant to HRS § 667-1, which provides for "foreclosure by action."  "[W]here a mortgagor defaults in payment of a debt secured by a mortgage, '[t]he circuit court may assess the amount due upon [the] mortgage, whether of real or personal property, without the intervention of a jury, and shall render judgment for the amount awarded, and the foreclosure of the mortgage.'" IndyMac Bank v. (continued . . . .)

could not, citing a Ninth Circuit case that in turn cited out-of-circuit state courts for the proposition that "'[in] states that have recognized substantive wrongful foreclosure claims, . . . such claims typically are available after foreclosure[.]'" Bank of Am., N.A. v. Reyes-Toledo, 140 Haw. 248, 398 P.3d 837 (Ct. App. 2017), cert. granted, No. SCWC-15-0000005, 2017 WL 5661035 (Haw. Nov. 24, 2017), and vacated and remanded, Reyes-Toledo II, 2018 WL 4870719, (first alteration in original) (quoting Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1043-44 (9th Cir. 2011)).

The Hawai`i Supreme Court reversed, holding that "a mortgagor may bring a wrongful foreclosure claim before a foreclosure decree is entered." Reyes-Toledo II, 2018 WL 4870719 at *14; see also id. at *2 ("[W]e hold that a party may bring a claim for wrongful foreclosure before the foreclosure actually occurs."). The court explained that such a claim could be brought if the mortgagor alleged (1) that the foreclosing mortgagee had failed to establish its entitlement to enforce the note, and (2) that "the mortgagor suffered an 'injury in fact' and damages as a result." Id. at *15. The court explained:

> If a party with no authority or standing
> files a foreclosure action, no foreclosure

(continued . . . .)
Miguel, 117 Haw. 506, 520, 184 P.3d 821, 835 (Ct. App. 2008), as corrected (July 17, 2008) (quoting HRS § 667-1).

decree would result, yet the mortgagor would have spent time and incurred expenses to defend against such a lawsuit. Allowing a mortgagor to bring a wrongful foreclosure counterclaim without awaiting an actual foreclosure benefits judicial economy and efficiency, as a foreclosure defendant should not have to institute a separate legal action after the pending foreclosure case is decided.

Id.

Although the Reyes-Toledo II court's concerns, as iterated, were premised on the judicial nature of the foreclosure proceeding, at bottom they revolved around the injury suffered by the plaintiff and were directed at ensuring that that injury would not be without possible redress. And though the decision by its terms is substantively applicable only to wrongful judicial foreclosures, this Court believes that its themes have meaningful ramifications in the instant context. Reyes-Toledo II means, first, that it is unnecessary for the penultimate event in a foreclosure—the decree of foreclosure (in the case of a judicial foreclosure), or (in a nonjudicial foreclosure) the foreclosure sale itself—to occur before an action for wrongful foreclosure may brought. Second, the Hawai`i Supreme Court identified the incurrence of damages as a necessary component of a claim of wrongful foreclosure. This latter point is evident both in the above-cited reasoning and in a footnote that addresses the instant circumstances:

> Generally, if a foreclosure is conducted
> negligently or in bad faith to the detriment
> of the mortgagor, the mortgagor may assert a
> claim of wrongful foreclosure by
> establishing the following elements: (1) a
> legal duty owed to the mortgagor by the
> foreclosing party; (2) a breach of that
> duty; (3) a causal connection between the
> breach of that duty and the injury
> sustained; and (4) damages.

Id. at *14 n.12 (citation omitted). This iteration of the

elements of claims like the Plaintiffs' is, of course, dictum.

But, reading it together with the reasoning in Reyes-Toledo II,

the Court is persuaded that the Hawai`i Supreme Court would hold

that, just like a claim of wrongful judicial foreclosure, a

wrongful nonjudicial foreclosure claim may be brought—and thus

accrues—when a mortgagor has incurred damages.[8]

Because it is often the case in claims brought

pursuant to former HRS Chapter 667 Part I that no damages were

incurred prior to sale of a property that was the subject of a

nonjudicial foreclosure, this prediction of how the Hawai`i

Supreme Court would hold may be compatible with those decisions

---

[8] The Court notes again the Reyes-Toledo II court's reasoning
that, in order for a claim for wrongful judicial foreclosure to
accrue, a mortgagor must have suffered an injury-in-fact and
damages as a result (such as the mortgagor having spent time and
incurred expenses to defend her interests) caused by the
institution of the judicial foreclosure action itself. 2018 WL
4870719, at * 15. This supports a finding that the mere
clouding of title itself (as occurred here with the publishing
of the Notice of Intent to Foreclose) does not constitute an
actionable injury such as would start the running of the statute
of limitations.

of courts in this District that have found claims for wrongful nonjudicial foreclosure to have accrued on or no earlier than the dates of sale. See, e.g., Lynch v. Bank of New York Mellon ("Lynch II"), No. CV 17-00195 LEK-RLP, 2018 WL 3624969, at *4–5 (D. Haw. July 30, 2018) (proceeding on the premise that a wrongful nonjudicial foreclosure claim accrued, at the earliest, on the occurrence of sale); Galima v. Ass'n of Apartment Owners of Palm Court by & through Bd. of Directors, No. CV 16-00023 LEK-KSC, 2017 WL 1240181, at *10 (D. Haw. Mar. 30, 2017) ("In the instant case, the foreclosure sale of the Unit occurred 'on or about October 19, 2010.' . . . Plaintiffs filed this action well within six years of that date."); see also In re Ho, 564 B.R. 49, 53 (Bankr. D. Haw. 2017), reconsideration denied, No. 10-03596, 2017 WL 1323406 (Bankr. D. Haw. Apr. 7, 2017) (finding action timely under six-year statute of limitation where the plaintiff asserted that a wrongful nonjudicial foreclosure caused the injury of loss of intangible property interest and "[a]ccording to the complaint, the foreclosure auction was held on July 21, 2010. This adversary complaint was filed on July 21, 2016."). But to the extent this holding does run contrary to those cases, the Court believes it is unavoidable. The new light cast by Reyes-Toledo II on the issue of when wrongful foreclosure claims accrue is a powerful one, and the Court is bound to be guided by it.

In the instant case, the necessity of the damages element means that, based on the record before the Court, Plaintiffs' claims did not accrue prior to the foreclosure sale. The Complaint alleges a number of injuries, but the record is devoid of information as to when some of them—namely, loss of possession, use, occupancy, and rental value of the Property, Compl. ¶¶ 67–68—occurred.  The two sources of damages whose dates can be roughly ascertained—loss of title to and value of the property, id.—certainly post-dated the Property's sale.  In other words, and on the record before the Court, Plaintiffs' claims for wrongful foreclosure were incomplete prior to the sale and could not then have been brought.

Because none of Plaintiffs' damages appear from the record to have occurred prior to the March 9, 2011, sale of the Property, the Court holds that their wrongful foreclosure claims accrued no earlier than that date.[9]

---

[9] Because the Court proceeds to find that Plaintiffs' filing on March 9, 2017, renders their wrongful foreclosure claims timely under the applicable statute of limitations, and because those claims would be timely had they accrued on any date after March 9, 2011, the Court need not address Plaintiffs' arguments regarding the date on which the sale was "completed," see Opp. at 20–22, and also need not wade into the issue of whether the occurrence rule or the discovery rule applies to wrongful foreclosure claims, see id. at 18–20.

### ii.  Applicable Statute of Limitations

Defendants next contend that Plaintiffs' wrongful foreclosure claims are time-barred under either HRS § 657-7's two-year time limitation or HRS § 657-1(1)'s six-year time limitation.  MSJ at 9-14.  The statute of limitations applicable to these claims is significant because Plaintiffs' claims are timely under HRS § 657-1(1) but likely untimely under HRS § 657-7.

The Court begins by noting the dearth of Hawai`i state-court authority on this issue.  As Defendants accurately state, it appears as though "[n]o Hawaii appellate court has addressed the statute of limitations applicable to a wrongful foreclosure claim."  MSJ at 10 n.4; see also Lowther v. U.S. Bank N.A., 971 F. Supp. 2d 989, 1011 (D. Haw. 2013), aff'd sub nom. Lowther v. U.S. Bank, 702 F. App'x 517 (9th Cir. 2017) ("There is no case law from the Hawai`i state courts addressing whether Hawai`i recognizes [a wrongful foreclosure] claim and, if so, what the applicable statute of limitations is.").  At least one district court in the District of Hawaii, however, has analyzed and ruled on this precise issue.  See Lowther, 971 F. Supp. 2d. at 1013-15.

The plaintiff in that case, a mortgagor, brought a putative class action against the assignee of a mortgage and note, asserting a claim for wrongful foreclosure, among other

claims.  Id. at 993-94.  The assignee moved to dismiss the mortgagor's claims under Rule 12(b)(6) for failure to state a claim.  Id. at 994-95.  Judge Kobayashi granted in part and denied in part the assignee's motion to dismiss, specifically dismissing the wrongful foreclosure claim without prejudice. Id. at 1017.  Significant here, Judge Kobayashi analyzed whether HRS § 657-7 or § 657-1 applied to a claim for wrongful foreclosure.  Id. at 1013.

First, Judge Kobayashi explained that the nature of a claim or right alleged in the pleadings determines the applicable limitations period.  Id. (citing Au v. Au, 63 Haw. 210, 214, 626 P.2d 173, 177 (1981)).  Accordingly, "the question is whether or not Plaintiffs are suing for injuries to persons or damage to property, not whether the action is one of ex contractu or ex delicto."  Id. (citations omitted).  Relying partially on the Supreme Court of Hawai`i's prior application of HRS § 657-1 to claims that are "hybrids of tort and contract and which have as their gravamen injury to intangible property interests," Judge Kobayashi held that § 657-1's six-year limitations period was applicable to the wrongful foreclosure claim alleged in Lowther.  Id. at 1013-14 (discussing, among other cases, Higa v. Mirikitani, 55 Haw. 167, 517 P.2d 1 (1973)); see also Galima, 2017 WL 1240181, at *10 (citing Lowther and explaining that "[t]his Court has predicted that the

22

Hawai'i Supreme Court would hold that a six-year limitations period applies to wrongful foreclosure claims pursuant to Haw. Rev. Stat. § 657-1(1).").

The Court finds the Lowther decision persuasive in determining the limitations period applicable to Plaintiffs' wrongful foreclosure claims. Like Plaintiffs here, the Lowther plaintiff "allege[d] that the wrongful foreclosure caused non-physical injury to his intangible interest in the Property, namely, his loss of title, possession, and invested personal funds." Lowther, 971 F. Supp. 2d. at 1013-14. Moreover, Judge Kobayashi reasoned in Lowther that a wrongful foreclosure claim based on such allegations "resounds in tort, but arises from the contractual relationship between Plaintiff and Defendant . . . ."[10] Id. at 1014; see also Niutupuivaha v. Wells Fargo Bank, N.A., No. CIV. 13-00172 LEK-KS, 2013 WL 3819600, at *12 (D. Haw. July 22, 2013) ("[T]he nature of [the alleged wrongful

---

[10] For this reason, an action for bad faith is not analogous to a claim for wrongful foreclosure. See MSJ at 10-11. Unlike a bad faith claim, an alleged wrongful foreclosure claim is dependent on, rather than independent from, the relationship established by the relevant contract. Nor does the Court agree with Defendants that "the underpinnings of Plaintiffs' wrongful foreclosure claim mirror the elements for slander of title." Id. at 12. Plaintiffs' wrongful foreclosure claims do not turn on allegedly false claims made in the Notice of Intent to Foreclose or Mortgagee's Affidavit; rather, they are predicated on the allegedly improper loss of title, possession, and rental value of the Property that resulted from the foreclosure sale. E.g., Compl. ¶¶ 23, 63.

foreclosure claim] is not a physical injury to the Property itself, and therefore § 657-7 does not apply.").  The same is true here, and Plaintiffs' wrongful foreclosure claims as alleged are hybrids of tort and contract to which the six-year limitations period under HRS § 657-1 applies.  Consequently, and because Plaintiffs' wrongful foreclosure claims did not accrue prior to March 9, 2011, those claims were timely when Plaintiffs commenced this action on March 9, 2017.[11]

### b. Doctrine of Laches

Defendants contend that, if Plaintiffs' wrongful foreclosure claims are not time-barred, they are barred by the doctrine of laches.  MSJ at 18-20.  Under Hawai`i law, laches applies to all civil actions under specific circumstances. Ass'n of Apartment Owners of Royal Aloha v. Certified Mgmt., Inc., 139 Haw. 229, 235, 386 P.3d 866, 872 (2016), as amended (Dec. 21, 2016).  As the Supreme Court of Hawai`i has explained:

> The doctrine of laches reflects the
> equitable maxim that "equity aids the

_____

[11] Given the Court's holding that the six-year limitations period under HRS § 657-1 applies to Plaintiffs' wrongful foreclosure claims, the Court need not decide whether the twenty-year limitations period under HRS § 657-31 applies based on Plaintiffs' challenge to "claim of title to or possession of the" Property.  Compl. ¶ 40; see MSJ at 15-17.  At any rate, the Court harbors significant doubt that HRS § 657-31 is applicable to wrongful foreclosure claims.  Niutupuivaha, 2013 WL 3819600, at *10 ("This Court disagrees with Plaintiffs' claim that § 657-31 applies [to a wrongful foreclosure claim] because § 657-31 governs claims of adverse possession.").

> vigilant, not those who slumber on their
> rights." . . . There are two components to
> laches, both of which must exist before the
> doctrine will apply. First, there must have
> been a delay by the plaintiff in bringing
> his claim, and that delay must have been
> unreasonable under the circumstances. . . .
> Second, that delay must have resulted in
> prejudice to defendant.

Id. at 234, 386 P.3d at 871 (quoting Adair v. Hustace, 64 Haw.

314, 320-21, 640 P.2d 294, 300 (1982)). The Hawai`i Supreme

Court has also held that, "in the absence of extraordinary

circumstances," laches will be applicable or inapplicable "in

analogy to the statute of limitations relating to law actions of

like character." Yokochi v. Yoshimoto, 44 Haw. 297, 300, 353

P.2d 820, 823 (1960) (citations omitted); see also Small v.

Badenhop, 67 Haw. 626, 642, 701 P.2d 647, 657 (1985) (quoting

Yokochi).

More recently, other courts have also concluded that,

under Hawai`i law, rare circumstances would have to be present

for laches to bar an action filed before the running of the

statute of limitations applicable to the action. See, e.g., In

re Ho, 564 B.R. at 54 ("It would be unusual to effectively apply

laches when a party has filed its action before the statute of

limitations applicable to the action has run."). And the Ninth

Circuit has iterated a similar principle. See Shouse v. Pierce

Cty., 559 F.2d 1142, 1147 (9th Cir. 1977) ("It is extremely rare

for laches to be effectively invoked when a plaintiff has filed

his action before limitations in an analogous action at law has run.").

In view of the Court's determination that Plaintiffs' wrongful foreclosure claims are timely under HRS § 657-1, application of the doctrine of laches is presumptively inappropriate. "When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show that extraordinary circumstances exist which require the application of the doctrine of laches." Yokochi, 44 Haw. at 301, 353 P.2d at 823. Here, Defendants bear the burden of establishing the existence of extraordinary circumstances such that laches should apply. But beyond pointing to the nearly six-year gap between the foreclosure sale and commencement of this action, MSJ at 19, Defendants have shown no unusual circumstances justifying the application of laches to Plaintiffs' timely wrongful foreclosure claims.[12] The Court

---

[12] In arguing for the application of laches, and in particular the existence of prejudice, Defendants assert that "Defendants' position has changed because the Property has been transferred to a good faith third-party purchaser [a point which Plaintiffs dispute] and Hawai`i's real estate market has changed dramatically since the foreclosure auction in 2011." MSJ at 19–20 (citing Adair v. Hustace, 64 Haw. 314, 321, 640 P.2d 294, 300 (1982) ("Common but by no means exclusive examples of such prejudice [to defendants as will support application of laches] are loss of evidence with which to contest Plaintiffs' claims, including the fading of memories or deaths of material witnesses, changes in the value of the subject matter, changes in defendant's position, and intervening rights of third (continued . . . .)

therefore declines to grant summary judgment on these claims on the basis of laches.

### c. **Wrongful Foreclosure Against Fannie Mae**

Defendants assert that all of Plaintiffs' claims against Fannie Mae, including their wrongful foreclosure claim, should be dismissed because "Fannie Mae did not conduct the foreclosure proceedings that form the basis of Plaintiffs' claims." MSJ at 22. But the Court finds that genuine issues of material fact exist regarding the nature and extent of Fannie Mae's involvement in the foreclosure, and that summary judgment on Plaintiffs' wrongful foreclosure claim against Fannie Mae is therefore inappropriate at this time.

In relevant part, Plaintiffs' theory of the case is that Fannie Mae bought some or all of the interest in the mortgage loan prior to the commencement of foreclosure proceedings, Compl. ¶ 18, and that Nationstar, in exercising the power of sale in the mortgage, was doing so as Fannie Mae's alter ego or agent, e.g., Compl. ¶ 7. As evidence for this,

(continued . . . .)
parties.")). That the Defendants appear to have been prejudiced in two (or perhaps three) of the "common" ways contemplated by Adair does not mean that extraordinary circumstances exist such that this is the rare case where laches should be found applicable to timely claims. In the absence of the presumption against laches that necessarily attends a finding of timeliness, Defendants' arguments regarding their prejudice might help to carry the day. As it is, Defendants have failed to overcome the presumption.

Plaintiffs point to the fact that the mortgagee's quitclaim deed, which conveyed the Property to the winning bidder at the foreclosure auction—a bidder identified in the Mortgagee's Affidavit as Nationstar or its nominee, Def.'s CSF Ex. 3 at 3—conveyed the Property to Fannie Mae, Pl.'s CSF Ex. 4. "Hence," reason Plaintiffs, "both Nationstar and Fannie Mae were acting as foreclosing mortgagees and exercising the power of sale to the mortgage on the Property." Compl. ¶ 7.

Affirmative evidence regarding the nature of Fannie Mae's interest in the mortgage and involvement in the foreclosure proceedings is conspicuously absent from Defendant's filings. But at the hearing on this Motion, Defendants, through their counsel, made several admissions, including: that Fannie Mae was the beneficial holder of the mortgage, that Nationstar was acting on behalf of Fannie Mae in conducting the foreclosure, and that Nationstar was acting as Fannie Mae's nominee when it purchased the Property by credit bid.

The record before the Court is quite limited; on this issue, what is unknown far outstrips what is known. But what is known, together with the inferences in the Plaintiffs' favor which the Court is bound to draw, create a genuine issue of material fact as to the extent of Fannie Mae's involvement in the foreclosure. Summary judgment as to Plaintiffs' wrongful foreclosure claim against Fannie Mae is therefore denied.

**III. Quiet Title and Ejectment**

Defendants' attacks on Plaintiffs' quiet title and ejectment claims are three-fold. Defendants argue: (1) that these claims fail as a matter of law, MSJ at 20-21; (2) that the quiet title claims, at least, are not in fact separate claims for relief, but rather a remedy sought for the wrongful foreclosure claims, id. at 15; and (3) that these claims, along with the rest of Plaintiffs' claims, are time-barred and/or subject to laches, id. at 2. The Court addresses the first two arguments and finds it unnecessary to address the third.

A plaintiff bringing a quiet title claim "must demonstrate that he or she has title to the land, either via paper title or adverse possession, and that he or she has superior title compared to the defendant." Ibbetson v. Kaiawe, 143 Haw. 1, 17, 422 P.3d 1, 17 (2018) (citing Maui Land & Pineapple Co. v. Infiesto, 76 Haw. 402, 407-08, 879 P.2d 507, 512-13 (1994); Ka`upulehu Land LLC v. Heirs & Assigns of Pahukula, 136 Haw. 123, 137-38, 358 P.3d 692, 706-07 (2015)); see also HRS § 669-1(a) ("Action may be brought by any person against another person who claims, or may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."). And a claim for ejectment requires a plaintiff to establish that she has the title to and right of possession of a piece of land, and that

possession is wrongfully withheld from her by another. Aames Funding Corp. v. Mores, 107 Haw. 95, 104, 110 P.3d 1042, 1051 (2005) (quoting Carter v. Kaikainahaole, 14 Haw. 515, 516 (Terr. 1902)).

In their Complaint, Plaintiffs assert their quiet title and ejectment claims "against all defendants," Compl. at 4, and seem to claim that their title is superior to that of both the Hardings and Fannie Mae, the conveyance to each of whom was purportedly "void or at least voidable," e.g., id. ¶ 23.[13] At the same time, Plaintiffs specifically acknowledge that "the Property remains encumbered by the Mortgage," Compl. ¶ 14, and the Complaint contains neither an allegation that Plaintiffs have paid or are able to pay the amount of indebtedness on the mortgage—which, as discussed below, is relevant to quiet title claims asserted against mortgagees—nor an allegation that either of the Defendants is in possession of the Property, as would be necessary for a viable ejectment claim.

In their Opposition, Plaintiffs remarkably declare that they would have no need of their Count I claims were Nationstar (and, presumably, Fannie Mae) to concede, and were the Court to "accept[] . . . for the purposes of the case," that "any remedy under Santiago is already available under Count II

─────────────────────────
[13] This citation refers to the first paragraph numbered "23." Compl. at 6-7.

[wrongful foreclosure]." Opp. at 8. "Thus, Plaintiffs have alleged Count I in an abundance of caution to ensure that they may recover fully in equity as in tort, as Hawai`i law under Santiago permits them to recover." Id. As is discussed in more detail below, in Santiago v. Tanaka, 137 Haw. 137, 366 P.3d 612 (2016), the Hawai`i Supreme Court iterated that courts have "power to fashion an equitable relief in foreclosure cases," 137 Haw. at 158, 366 P.3d at 633 (citation omitted), and noted that the mortgagor might "regain title to and possession of the property" in the event of a wrongful nonjudicial foreclosure, id.

At the hearing on the instant Motion, Plaintiffs, through their counsel, attempted to flesh out their reasoning behind their quiet title claims in particular. Pushing back against the notion that their quiet title claims may fail because Plaintiffs have not alleged that they have tendered or are able to tender the amount of their debt under the mortgage, Plaintiffs pointed to Hungate v. Law Office of David B. Rosen, 139 Haw. 394, 391 P.3d 1 (2017), as supporting the proposition that tender is not required in light of what the Plaintiffs seek to do: quiet title to the Property except in regard to the mortgage. In Hungate, however, no quiet title claim was asserted, see generally id., and Plaintiffs have cited to no cases, either in their Opposition, their Local Rule 7.8 filing,

or at the hearing, that appear to contemplate the existence of a quiet title claim of this nature.

The Court now addresses Plaintiffs' theories and representations.

### a. Were the Court to Construe Plaintiffs' Quiet Title and Ejectment Claims as Separate Claims for Relief, Those Claims Would Fail as a Matter of Law

The Court finds that Plaintiffs' claims of quiet title and ejectment against the Defendants, if construed as separate claims, would fail for reasons Defendants highlight in their MSJ.

### 1. Quiet Title

Defendants argue that Plaintiffs' quiet title claims against them must fail because "Plaintiffs have not alleged that they have paid or are able to tender the amount of indebtedness," as is necessary to assert a claim of quiet title against a mortgagee. MSJ at 20-21. The Hawai`i Supreme Court has never endorsed this view of the law, and therefore the Court must look for guidance to other persuasive authority. See Asante v. Cal. Dep't of Health Care Servs., 886 F.3d 795, 799 (2018) ("If there is no state supreme court decision on a state law issue, we look to other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." (citation and

internal quotation marks omitted)).  The weight of persuasive
authority, including decisions by both Hawai`i state appellate
courts and federal courts in this District, persuades the Court
that, if the Supreme Court of Hawai`i were to speak on the
issue, it would agree that a mortgagor cannot maintain a claim
for quiet title against a mortgagee unless she alleges that she
has satisfied her debt or is able to.  See, e.g., Bank of New
York Mellon v. Mazerik, 139 Haw. 266, 388 P.3d 54 (Ct. App.
2016), abrogated due to its reliance on the federal plausibility
pleading standard by Reyes-Toledo II, 2018 WL 4870719 ("'[I]n
order for mortgagors to quiet title against the mortgagee, the
mortgagors must establish that they are the rightful owners of
the property and they have paid, or are able to pay, the amount
of their indebtedness.'") (quoting Caraang v. PNC Mortg., 795 F.
Supp. 2d 1098, 1126 (D. Haw. 2011); Ramos v. Chase Home Fin.,
810 F. Supp. 2d 1125, 1143 (D. Haw. 2011)); Bank of Am., N.A. v.
Hermano, 138 Haw. 140, 377 P.3d 1058 (Ct. App. 2016), abrogated
due to its reliance on the federal plausibility pleading
standard by Reyes-Toledo II, 2018 WL 4870719 (same) (citing Mier
v. Lordsman, Inc., 2011 WL 285862, at *13 (D.Haw. Jan. 27,
2011)).

     In their Local Rule 7.8 submission, Plaintiffs contend
that, in Reyes-Toledo II, the Hawai`i Supreme Court had
"implicitly addresse[d]" Defendants' argument that the tender

rule prohibits Plaintiffs from pursuing their quiet title claims against Defendants because the Complaint contains no allegations that Plaintiffs have paid or can pay the amount due under their mortgage. See ECF No. 49 at 2; MSJ at 20-21. To the extent Plaintiffs are arguing that Reyes-Toledo II constitutes a disavowal (implicit or otherwise) of the tender rule by the Hawai`i Supreme Court , the Court disagrees.

In the decision the Reyes-Toledo II Court was reviewing, the Intermediate Appellate Court ("ICA") had cited Amina v. Bank of New York Mellon, 2012 WL 3283513 (D. Haw. Aug. 9, 2012), for the proposition that, although the tender rule does not apply where a mortgagor brings a quiet title claim against a party who is alleged not to be a mortgagee, mortgagors who dispute a putative mortgagee's status as such are not exempted from the tender rule if their dispute is grounded in claims that the defendant's mortgagee status is invalid. Id. at *5 ("[F]or example, because the mortgage loan was securitized or because Defendant does not hold the note"); Bank of Am., N.A. v. Reyes-Toledo, 140 Haw. 248, 398 P.3d 837, 2017 WL 3122498 (Ct. App. 2017) (unpublished decision), cert. granted, No. SCWC-15-0000005, 2017 WL 5661035 (Haw. Nov. 24, 2017), and vacated and remanded, No. SCWC-15-0000005, 2018 WL 4870719 (Haw. Oct. 9, 2018), as corrected (Oct. 15, 2018) (citing Amina). The ICA went on to affirm the circuit court's dismissal of Reyes-

Toledo's quiet title claim on the grounds that she had not

alleged tender and her allegations disputing Bank of America's

mortgagee status fell into the category <u>Amina</u> had delineated as

not constituting an exception to the tender rule.  2017 WL

3122498, at *5.

The <u>Reyes-Toledo II</u> court reversed.  It is important

to note here that, in addition to its significance in the arena

of wrongful foreclosure, <u>Reyes-Toledo II</u> is a resounding

rejection of the federal <u>Twombly</u>/<u>Iqbal</u> plausibility standard and

a reiteration that, in Hawai`i, the tradition of liberal notice

pleading continues.  2018 WL 4870719, at *7-13.  It is in this

light that the court's rather cryptic disposition of Reyes-

Toledo's quiet title claim should be read.

It appears to the Court that three interpretations of

the Hawai`i Supreme Court's treatment of Reyes-Toledo's quiet

title claim are possible.  Only one of these readings would

assist Plaintiffs, and it is one to which <u>Reyes-Toledo II</u> itself

lends very little credence.  The <u>Reyes-Toledo II</u> court's

discussion of the issue, in full, is as follows:

> Homeowner also incorporated by reference the
> allegations in her wrongful foreclosure
> count into her quiet title count.  Stating
> she was the owner of the Property, she
> sought to quiet title to the Property
> against Bank of America's adverse claim,
> asserting Bank of America was not the
> mortgagee.  Accepting Homeowner's
> allegations as true, she has satisfied HRCP

> Rule 8(a)'s pleading requirements by
> asserting that she has a substantial
> interest in the Property, and that her
> interest in the Property is greater than
> Bank of America's.  If Bank of America is
> indeed not the mortgagee, Homeowner's quiet
> title count states a claim upon which relief
> can be granted.  Thus, we conclude the ICA
> erred in affirming the circuit court's
> dismissal of the quiet title count within
> her counterclaim.

Id. at *16 (citations omitted).  In this Court's view, the above

could be read either as a rejection of the rule announced in

Amina (in other words, as holding that a mortgagor who disputes

a mortgagee's status as such, for whatever reason, is released

from the tender rule) or as a natural result of the notice

pleading standard the Reyes-Toledo II court had just thoroughly

endorsed (such that, at the motion-to-dismiss stage in a Hawai`i

state court, any assertion that a party is not a mortgagee will

release a borrower's quiet title claim from the tender rule).

The Court is of the opinion that the latter reading is correct,

as it is buttressed by Reyes-Toledo II's conclusion, wherein the

Hawai`i Supreme Court concludes that "the ICA erred in affirming

the circuit court's dismissal of the remaining three counts of

Homeowner's counterclaim [of which quiet title was one] because

the assertions satisfied our traditional notice pleading

standard." 2018 WL 4870719, at * 16.

This interpretation does not save Plaintiffs' quiet

title claims, and neither would the other plausible reading.

Not only is the instant Motion one for summary judgment (rather than a motion to dismiss, as in Reyes-Toledo II), but Plaintiffs have made no allegations that either Defendant is not a mortgagee—indeed, they have strenuously argued the opposite. And if Reyes-Toledo II can be read to say anything about the tender rule that is applicable in this context, it must be read as the Hawai`i Supreme Court's implicit endorsement of the rule; after all, the survival of Reyes-Toledo's quiet title claim, devoid as it was of allegations of tender, appears to have been predicated on the Hawai`i Supreme Court's acceptance at face value, under the notice pleading standard, of her allegations that Bank of America was not the mortgagee.

At the hearing on this Motion, Plaintiffs urged the Court to read Reyes-Toledo II as permitting a mortgagor to maintain a quiet title claim against a mortgagee where the mortgagor neither disputes the mortgagee's status as such nor alleges tender. Plaintiffs seemed to contend Reyes-Toledo II means that, if a mortgagor acknowledges the validity of the mortgage and seeks to quiet title only to the property itself, then her quiet title claim may survive even absent an allegation of tender. The Court cannot agree with such a reading of Reyes-Toledo II, which appears at best an imperfect fit with the facts of Reyes-Toledo II and which has no basis whatsoever in the Hawai`i Supreme Court's stated reasoning.

Here, Plaintiffs themselves characterize both
Defendants as mortgagees, _e.g._. Opp. at 1 (denominating
Nationstar and Fannie Mae as "collectively 'the Mortgagee
Defendants'" (emphasis omitted)); Compl. ¶¶ 20, 23, 40, 65, 66—a
characterization to which Defendants' admissions at the hearing
lend substantial credence.  It is also undisputed that
Plaintiffs did not allege either that they have tendered or are
able to tender the amount of their indebtedness under the
mortgage, such as would be necessary to maintain a quiet title
action against a mortgagee or mortgagees.

At the hearing, Plaintiffs answered the Court's
concerns in this vein by stating again that the tender rule is
inapplicable because they do not seek to quiet title as against
the mortgage, but rather only to the Property itself.  But
Plaintiffs have provided no authority, and nor can the Court
locate any, that would support the existence and viability of
such a quiet title claim as against a mortgagee.  Plaintiffs'
"quiet title claims" against Nationstar and Fannie Mae fail,
either because of the tender rule or because Plaintiffs' attempt
to work around that rule deprives their claims of their
essential thrust: They are not actually seeking to demonstrate

that their title is superior to Defendants'.[14]  Insofar as

Plaintiffs are in fact attempting to bring quiet title claims

against Defendants, those claims fail, and summary judgment is

appropriate.

### 2. Ejectment

Defendants have argued that neither of them is in

possession of the Property, and that therefore Plaintiffs' claim

of ejectment against them is "a nullity."  MSJ at 21; see also

Aames Funding Corp., 107 Haw. at 104, 110 P.3d at 1051 ("'[A]

complainant who has the title to and right of possession of

certain land and from whom possession is wrongfully withheld by

another' is entitled to 'the ordinary remedy of law of an action

of ejectment.'") (quoting Carter, 14 Haw. at 516).  Plaintiffs,

meanwhile, have neither asserted nor produced evidence tending

to show that Defendants are in possession of the Property.

Therefore, and insofar as Plaintiffs are attempting to bring

---

[14] Of course, a plaintiff bringing a quiet title claim must also
establish that he has title to the at-issue property, "either
via paper title or adverse possession." Ibbetson, 143 Haw. at
17, 422 P.3d at 17 (citation omitted).  Hawai`i courts have been
known to entertain quiet title claims where the plaintiff's
claim to title is dependent upon a favorable outcome in a
pendent wrongful foreclosure claim.  See, e.g., Greenspon v.
Deutsche Bank Nat. Tr. Co., 138 Haw. 52, 375 P.3d 1290 (Ct. App.
2016), reconsideration denied, No. CAAP-13-0001432, 2016 WL
4077097 (Haw. Ct. App. July 28, 2016) (unpublished decision)
("Greenspon's assertion of superior title to DBNTC is dependent
on an unwinding of the non-judicial foreclosure.").  That
Plaintiffs do not now have title is therefore not fatal to their
quiet title claims.

ejectment claims against the Defendants, the Defendants are entitled to summary judgment on those claims.

### b. Plaintiffs' Quiet Title and Ejectment Claims Are Not Separate Claims for Relief

The clear infirmity of Plaintiffs' quiet title and ejectment claims lends support to the Court's conclusion, reached after thorough review of Plaintiffs' representations and applicable authorities, that these claims are not in fact separate claims for relief.  Rather, as Defendants state with regard to Plaintiffs' quiet title claims, they are remedies sought for Plaintiffs' wrongful foreclosure claims.  See MSJ at 15.

Plaintiffs' overarching concern appears to be the availability of remedies.  Plaintiffs seem to be concerned that equitable remedies, such as return of title and possession, might be available to them only if they plead claims of quiet title and ejectment.  See Opp. at 6-9.  However, it is clear to the Court that the equitable remedies of return of title and possession, as well as tort remedies, are available under a wrongful foreclosure claim.

Plaintiffs state in their Opposition that they want access to "any remedy under Santiago." Id. at 8.  The Santiago court both emphasized that a court considering a foreclosure case has the power to fashion equitable relief, 137 Haw. at 158,

366 P.3d at 633, and specifically stated that, "[w]here it is determined that the nonjudicial foreclosure of a property is wrongful, the sale of the property is invalid and voidable at the election of the mortgagor, <u>who shall then regain title to and possession of the property</u>," 137 Haw. at 158, 366 P.3d at 633 (emphasis added); <u>see also</u> 137 Haw. at 154 n.33, 366 P.3d at 629 n.33 (noting that the "classic remedy" for the claim of wrongful foreclosure is "return of title and possession").[15]  The court went on to hold that, because the property had been purchased by an innocent third party,[16] the wronged mortgagors were entitled to "restitution of their proven out-of-pocket losses" from the wrongful foreclosure and the property's subsequent sale.  137 Haw. at 158, 366 P.3d at 633; <u>see also</u> 137 Haw. at 154 n.33, 366 P.3d at 629 n.33 ("[M]oney damages . . . may be substituted for title and possession in certain instances pursuant to the equitable powers of a court in adjudicating a case arising from a mortgage foreclosure[.]" (citation omitted)).

---

[15] The Court need not and does not now decide whether the sale was void or voidable, but at present it sees no reason why a finding of voidness rather than voidability would reduce its power to fashion an equitable remedy or result in anything other than the "classic remedy" outlined in <u>Santiago</u>.

[16] The mortgagors in <u>Santiago</u> did not contest that the third-party purchaser was a bona fide purchaser.  <u>Santiago v. Tanaka</u>, 134 Haw. 179 n.12, 339 P.3d 533 n.12 (Ct. App. 2014) (unpublished), vacated, 137 Haw. 137, 366 P.3d 612 (2016).

The Court does not perceive why the equitable remedies outlined in <u>Santiago</u> would not be available to Plaintiffs here, should they prevail on their wrongful foreclosure claims. There is therefore no need for the quiet title and ejectment claims against the Defendants, which are the only claims of this character that are now before the Court. These claims are essentially duplicative of Plaintiffs' wrongful foreclosure claims against Defendants, and cannot stand against mortgagees who assert neither title to nor right of possession of the Property.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment, ECF No. 15, as follows:

1. Defendants' Motion for Summary Judgment on Plaintiffs' quiet title, ejectment, and declaratory relief claims against Nationstar Mortgage LLC and Federal National Mortgage Association is GRANTED;

2. Defendants' Motion for Summary Judgment on Plaintiffs' wrongful foreclosure claims against Nationstar Mortgage LLC and Federal National Mortgage Association is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, November 7, 2018.



_____
Alan C. Kay
Sr. United States District Judge

Gamblin et al. v. Nationstar Mortgage LLC et al., Civ No. 17-00557 ACK-RLP,
Order Granting in Part and Denying in Part Defendants' Motion for Summary
Judgment.